NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| Plaintiff, : | |
| : | **Criminal No. 10-633 (SRC)** |
| v. : | |
| : | **OPINION & ORDER** |
| ANIA NOWAK and ZBIGNIEW CICHY, : | |
| : | |
| Defendants. : | |
| : | |
| : | |

**CHESLER**, District Judge

This matter comes before the Court upon the motion filed by *pro se* Defendant Ania Nowak for recusal of the undersigned from this action [docket entry 105]. Plaintiff the United States of America (the "Government") has opposed the motion. The Court has considered the papers filed, and for the reasons that follow, denies the motion.

Nowak invokes three sources of legal authority she claims entitle her to relief: Sections 144, 455(a) and 455(b) of Title 28, United States Code. Section 455(a) requires a judge to recuse himself from "any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The other two provisions are similar, establishing a standard specifically concerned with a judge's bias for or against a party. Section 455(b) requires recusal when a judge "has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1). Section 144 requires recusal upon a party's filing of an affidavit sufficiently stating that the judge "has a personal bias or prejudice either against [the movant] or in favor of any adverse party." 28 U.S.C.

§ 144.[1] Third Circuit has held that a court's impartiality might reasonably be questioned only upon some extrajudicial basis for the bias claim or upon a showing that the Court has demonstrated "such a high degree of favoritism or antagonism as to make fair judgment impossible." *United States v. Bertoli*, 40 F.3d 1384, 1412 (3d Cir. 1994) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). The focus is on the source of the bias, and the term "extrajudicial" is really "intended to convey the notion of a 'wrongful or inappropriate' bias, regardless of whether the improper bias arises from evidence adduced at trial or from some extraneous source." *Id.* Accordingly, the Third Circuit has held that, generally, a judge's rulings and remarks, even if disapproving or hostile to a party, do not support a bias or partiality challenge. *Id.* (citing *Liteky*, 510 U.S. at 555).

In her single-spaced, 17-page submission to the Court, Nowak challenges the Court's impartiality for a host of reasons. Organizing the issues she raises into categories, the Court understands Nowak to argue that the Court demonstrated bias in its (1) reaction to her request to represent herself against the criminal charges she faces in these proceedings, (2) imposition of restrictive bail conditions and (3) alleged favoritism to the prosecution. None of these allegations, alone or considered together, trigger the Court's duty to recuse itself.

With regard to the Court's colloquy with Defendant Nowak concerning her application to proceed *pro se*, the Court followed the required procedure to make a thorough inquiry and ensure that the defendant understands the pitfalls of self-representation. *See Faretta v. California*, 422 U.S. 806, 835-36 (1975); *United States v. Peppers*, 302 F.3d 120, 133 (3d Cir.), *cert. denied*, 537

---

[1] The Court notes that Nowak has not submitted an affidavit with her motion as required by Section 144.

U.S. 1062 (2002). The Court was admittedly stern and blunt in its remarks to Nowak consistent with the gravity of her decision to represent herself against criminal charges and to forego her right to the services and expertise of trained legal counsel. When faced with a criminal defendant's application to proceed *pro se*, a court must make a "thorough inquiry, on the record, to assure itself that the defendant fully apprehends the nature of the charges against him, the perils of self-representation, and the requirements that will be placed upon him." *Peppers*, 302 F.3d at 133. It is in that regard that the Court warned Nowak, as it was required to do, that she does not have the training, skills and experience required to conduct an effective defense. Nowak has not demonstrated that the Court's remarks displayed bias against her. Nor is any bias reflected in the Court's decision to appoint as stand-by counsel an attorney who had previously represented Nowak in this case. Though Nowak accuses the Court of appointing Christopher Adams, an attorney who had been provided to Nowak pursuant to the Criminal Justice Act, for the purpose of punishing her for her decision to proceed *pro se*, her accusations are unfounded. Indeed, the Court's appointment of Mr. Adams, an accomplished and experienced trial lawyer, was designed to select a person who could capably and effectively fulfill the duties of stand-by counsel. Mr. Adams, with his extensive knowledge of the factual background of this case and the nature of the charges, will be able to handle Nowak's procedural questions in the context of this mortgage fraud case.[2]

---

[2] On the matter of self-representation, Nowak has also complained of Court bias as manifested, according to her, in the Court's hostility toward her co-defendant husband's decision to fire his attorney, Michael Pedicini. Nowak argues that Mr. Pedicini had undermined her husband's ability to defend himself, but that the Court "punished" her husband for discharging him because of some close relationship between the Court and Mr. Pedicini. First, the Court notes that while Mr. Pedicini is, indeed, an experienced federal practitioner, Nowak's accusations of an inappropriate relationship are baseless. Second, the Court acknowledges that it expressed

3

Nowak has also complained that her restrictive bail conditions indicate bias. The record of this case, however, demonstrates that the vast majority of bail conditions have been set by various magistrate judges who have heard Defendants' bail modification motions, not by this Court. Moreover, this Court has in fact determined that Nowak and her co-defendant pose a flight risk, for a number of reasons set forth on the record. This concern with flight justifies the Court's imposition of more restrictive conditions as the case has drawn nearer to its trial date. It also justifies the Court's questioning Nowak about her use of a cell phone on May 9, 2011, particularly in light of her representation to Pretrial Services that she did not have a cell phone. Her access to this previously undisclosed cell phone raised a legitimate concern that the phone might be used by Nowak in an attempt to flee.

Nowak has also failed to establish that this Court has shown favoritism to the Government. She claims this bias in favor of the Government is rooted in the undersigned's lack of experience, prior to becoming a judge, as a criminal defense attorney. The Court's background in the legal profession is irrelevant to the issue of bias, and this allegation by Nowak warrants no further discussion. She also argues that the Court showed favoritism to the Government by granting its motion to adjourn the trial date. Apart from lacking any merit, this argument overlooks the Court's reasons for the adjournment - to allow the Government to supersede the Indictment to included charges relating to an additional fraudulent loan it had discovered and to accommodate the changed circumstances brought about by Nowak's decision

---

disapproval for co-defendant Cichy's repetitive discharge of his defense attorneys. Mr. Pedicini was Cichy's fifth successive lawyer in this case and his third CJA attorney. The Court's dissatisfaction with Cichy's tactics in no way stemmed from any personal bias against him.

4

to proceed *pro se*. Nowak further accuses the Court of carrying on an improper relationship with the law firm of Gibbons, P.C. based on the firm's employment of attorneys who had served as the Court's law clerks in the past. She argues that this reflects a lack of impartiality in this case because Gibbons represents one of the victims of Defendants' alleged fraud and is responsible, according to Nowak, for initiating the pursuit of criminal charges against Defendants. These facts, assuming they are true, simply do not demonstrate that the Court has a personal bias concerning the parties or that its impartiality might reasonably be questioned. Finally, Nowak argues that the Court's decision to adjourn indefinitely the sentencing of a cooperating witness, who had been charged as a co-conspirator of Defendants, constitutes the Court's most blatant demonstration of bias. This argument does not support Nowak's allegations of bias. Instead, it reveals Nowak's lack of understanding of the usual procedure of criminal cases, in which the sentencing of a cooperating witness is typically postponed until after that witness testifies, permitting the Government to make an appropriate motion for a downward departure in the witness's sentence to reflect his cooperation.

      Nowak's motion for the Court to recuse itself, in sum, fails even to approximate the standard for recusal, much less satisfy it. She has not demonstrated that the Court harbors "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Bertolli*, 40 F.3d at 1412. Nor has she presented any basis upon which this Court's impartiality may reasonably be questioned. Indeed, as the Government's submission observes, her complaints of numerous - and unfounded - examples of the Court's lack of impartiality amount, if anything, to a materialization of the risk associated with self-representation. Nowak's lack of familiarity with criminal procedure appears to underpin her perception of bias in even the Court's most

administrative and mundane decisions.

Accordingly, **IT IS** on this 24th day of June, 2011,

**ORDERED** that Defendant Ania Nowak's motion for recusal [docket entry 105] be and hereby is **DENIED**.

    s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge